# IN THE UNITED STATES DISTRICT
## FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| BRIAN PRATER, on behalf of himself and all others similarly situated, | CIVIL CASE |
| Plaintiff, | Case No. 3:21-cv-66 |
| v. | CLASS AND COLLECTIVE ACTION |
| ALLIANCE COAL, LLC;<br>ALLIANCE RESOURCE PARTNERS, L.P.;<br>ALLIANCE RESOURCES OPERATING<br>PARTNERS, L.P.;<br>ALLIANCE RESOURCE MANAGEMENT<br>GP, LLC; and<br>GIBSON COUNTY COAL, LLC, | JURY DEMANDED |
| Defendants. | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff Brian Prater, though his undersigned counsel, individually, and on behalf of all persons similarly situated, files this Class and Collective Action Complaint ("Complaint"), seeking all available remedies under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* Plaintiff asserts his FLSA claims as a collective action under FLSA Section 16(b), 29 U.S.C. § 216(b). Plaintiff also asserts a claim for unjust enrichment under Indiana common law. Plaintiff asserts his claim for unjust enrichment as a class action claim, pursuant to Fed. R. Civ. P. 23.

## INTRODUCTION

1. This is an action brought on behalf of individuals who are current and former coal miners employed by Defendants, challenging Defendants' unlawful failure to pay for "off-the-clock work" in violation of the FLSA as well as Defendants' failure to pay all overtime, including by unlawfully excluding promised, non-discretionary bonuses in the calculation of the employees'

"regular rate" for the purpose of determining the appropriate overtime rates of pay. These failures also resulted in the unjust enrichment of Defendants under Indiana common law.

2.      Defendants Alliance Coal, LLC, Alliance Resource Partners, L.P., Alliance Resources Operating Partners, L.P., Alliance Resource Management GP, LLC, and Gibson County Coal, LLC (collectively, "Defendants") operated as joint employers of Plaintiff and all employees who worked as miners in Defendants' Gibson North and Gibson South mines in Gibson County, Indiana (collectively, the "Indiana Mines"), and Defendants' policies and practices deprived Plainitff and similarly situated coal miners for all pay that they were and are entitled to by law. Fed. Rule Civ. P.

## JURISDICTION AND VENUE

3.      Pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, this Court has subject matter jurisdiction over Plaintiff's FLSA claims.

4.      Pursuant to Fed. R. Civ. P. 4(k)(1)(A), Ind. Trial P. R. 4.4(A), and federal due process, the Court has general and specific personal jurisdiction over all Defendants. All Defendants maintain continuous and systematic contacts with Indiana, as they all jointly operate the Gibson North and Gibson South mines located therein. Defendants Alliance Coal, LLC ("Alliance"), Alliance Resource Operating Partners, L.P, ("AROP"), Alliance Resource Management GP, LLC ("ARM"), and Alliance Resource Partners, L.P. ("ARLP") (ARLP, AROP, ARM and Alliance are together the "Parent Defendants") are the parent entities that own and control each of the subsidiary Defendant Gibson County Coal, LLC (the "Subsidiary Defendant").[1] Defendants operate as essentially the same entity, and the Parent Defendants have implemented

---

[1] According to ARLP's annual report on form 10K, which was filed with the U.S. Securities and Exchange Commission on February 20, 2020, Defendant ARLP owns 98.9899% of the interest in Defendant AROP, which in turns owns 99.999% of the interest in Defendant Alliance, which in turn owns 100% of the interest in Defendant Gibson

all policies, protocols, guidelines, and internal monitoring systems used in the Indiana Mines. All Defendants have availed themselves of Indiana, because they have regularly conducted business in Indiana, and because the FLSA violations and unjust enrichment occurred in Indiana.

5.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Defendants reside in Indiana, and a substantial part of the events giving rise to Plaintiff's and Class Members' claims occurred within this judicial District. Defendnats conduct business in this judicial District. Specifically, the Parent Defendants own and operate the Subidary Defendant, and employed Plaintiff and similarly situated coal miners at the Indiana Mines, who are subject to the alleged unlawful pay practices.

## PARTIES

6.      Plaintiff, Brian Prater, is an adult individual presently residing in Owensville, Indiana. He has been employed as a coal miner at the Gibson North and Gibson South mines since 2003. During the three-year period immediately preceding the filing of this Complaint, he was employed by Defendants at the Gibson North mine from 2017 to 2018 and from 2018 to April 2020 at Gibson South. Plaintiff was jointly employed by Defendants. Pursuant to 29 U.S.C. § 216(b), Plaintiff Prater has consented in writing to being a Plaintiff in this action.

7.      Defendant Alliance Coal, LLC is a for-profit limited liability company organized under the laws of the state of Delaware, with its principal place of business located at 1717 S. Boulder Avenue, Tulsa, Oklahoma 74119-4886.

8.      Defendant Alliance Resource Partners, L.P. is a for-profit limited partnership organized under the laws of the state of Delaware, with its principal place of business located at 1717 S. Boulder Avenue, Tulsa, Oklahoma 74119-4886.

9.      Defendant Alliance Resource Operating Partners, L.P. is, upon information and

belief, a for-profit limited partnership organized under the laws of the state of Delaware, with its principal place of business located at 1717 S. Boulder Avenue, Tulsa, Oklahoma 74119-4886.

10.     Defendant Alliance Resource Management GP, LLC is, upon information and belief, a for-profit limited liability company organized under the laws of the state of Delaware, with its principal place of business at 1717 S Boulder Avenue, Ste 400, Tulsa, Oklahoma, 74119 – 4886.

11.     Defendant Gibson County Coal, LLC, ("Gibson Couny Coal") has operated the Gibson North and Gibson South mines, which are underground mines employing room-and-pillar mining techniques to produce high-sulfur coal. Until approximately January 2020, Gibson County Coal operated the Gibson North Mine, located near the city of Princeton County, Indiana, and it presently operates the Gibson South Mine, located near the city of Owensville in Gibson County, Indiana. Upon information and belief, Gibson County Coal is a for-profit limited liability company organized under the state of Delaware, with its principal place of business being located at 1717 South Boulder Avenue, Tulsa, Oklahoma 74119-4886.

12.     Upon information and belief, Gibson County Coal is a wholly-owned subsidiary of Alliance Coal, LLC (which is in turn a subsidiary of the other Parent Defendants) and its employment policies and procedures, described below, are uniformly established and directed by the Parent Defendants.

13.     Upon information and belief, each Parent Defendant exerted and exerts supervisory control over all employees (including Plaintiff) of the Indiana Mines, and was involved in the daily operations of the Indiana Mines as it pertains to the policies, processes and procedures for the compensation of all such employees, as described in more detail below.

14.     At all times material to this action, Defendants have been engaged in commerce or

in the production of goods for commerce as defined by the FLSA.

15.    Defendants' employees are engaged in interstate commerce and handle or work on goods that have been moved in and/or produced in commerce.

16.    Defendants' annual gross volume of sales made or business done exceeds $500,000.

17.    The unlawful acts alleged in this Complaint were committed by Defendants and/or their officers, agents, employees, or representatives, including as alter egos of one another, while actively engaged in the management of Defendants' businesses or affairs and with the authorization of Defendants.

18.    During all times relevant, Plaintiff was an employee of Defendants and is covered by the FLSA.

19.    During all times relevant, Defendants are employers and/or enterprises covered by the FLSA.

## CLASS AND COLLECTIVE DEFINITIONS

20.    Plaintiff brings Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of themselves and the following collective:

> All current and former non-exempt employees who performed work in underground mines or surface coal preparation plants at the Gibson North and South mines in Indiana, and who were employed by Defendants between April 13, 2018 and the present (the "FLSA Collective").

21.    Plaintiff brings Count II of this lawsuit as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and the following class:

> All current and former non-exempt employees who performed work in underground mines or surface coal preparation plants at the Gibson North and South mines in Indiana, and who were employed by Defendants between April 13, 2019[2] and the present (the "Indiana Class").

---

[2] Indiana applies a two-year limitations period to claims for unjust enrichment. *See* Ind. Code § 34-20-3-1; *see also Knutson v. UGS*, 2007 WL 2122192 at *5 (S.D. Ind. July 19, 2007).

22.     The FLSA Collective and the Indiana Class are together referred to as the "Classes" and the members of the Classes are "Class Members."

23.     The employees who constitute the FLSA Collective and the Indiana Class are referred to as "Coal Miners."

24.     Plaintiff reserves the right to redefine the Collective and/or the Indiana Class prior to notice or class certification, and thereafter, as may be warranted or necessary.

## STATEMENT OF FACTS

**A.      Defendants' Mining Operations and Operational Structure**

25.     Defendants comprise and hold themselves out to be the single entity Alliance -- "the   second   largest   coal   producer   in   the   eastern   United   States." *See* https://www.arlp.com/peer/about-us/default.aspx (last visited April 5, 2021).

26.     Defendants operate seven underground mining complexes in Indiana, Illinois, Kentucky, Maryland, and West Virginia.  These operations include the Indiana Mines.

27.     Each of the Defendants are joint employers of the Coal Miners, as Defendants' operations are interrelated and share common management. While the Subsidiary Defendant, Gibson County Coal, purports to operate the Indiana Mines, the Parent Defendants, ARLP, AROP and Alliance, control every significant aspect of their subsidiaries' coal mining operations.

28.     Joseph W. Craft III, is ARM's Chairman, President and Chief Executive Officer and is also the President of Gibson County Coal, LLC. Additionally, Mr. Craft is the President, Chief Executive Officer and a Director of Alliance Coal since August 1999 and Chairman of the Board of Directors since January 1, 2019. He is the President, Chief Executive Officer, and Chairman of Alliance Resource Partners, L.P. Mr. Craft also serves as President, Chief Executive

Officer and Chairman of the Board of Directors of AGP, the general partner of Alliance Holdings GP, L.P.

29.     The chain of control among the various entities is depicted below:[3]



30.     Until approximately January 2020, Gibson County Coal, LLC operated the Gibson North Mine, an underground coal mining complex located near the city of Princeton in Gibson County, Indiana and it presently operates the Gibson South Mine, located near the city of Owensville in Gibson County, Indiana. The Gibson North mine began production in November 2000 and was idled in December 2015 in response to market conditions. The Mine resumed production in May 2018 and operated until January 2020 when it was again idled in response to market conditions. When in operation, the Gibson North Mine had the capacity to produce 700 tons of raw coal per hour. The Gibson South Mine began operations in April 2014 and has capacity

---

[3] *See* 2019 Form 10K, at 4.

to produce 1,800 tons of raw low/medium-sulfur coal per hour.

31.     When it was last in operation, the Gibson North Mine employed approximately 185 miners. The Gibson South mine employs approximately 370 people. *See* Alliance Resource Partners, L.P., 2019 10K Form, at 37.

32.     The Parent Defendants maintain operational control over the day-to-day functions of Plaintiff and Class Members.

33.     In particular, the Parent Defendants jointly controlled and directed the employment policies and practices, including the illegal pay practices of their subsidiaries, by directing such subsidiaries to follow the uniform time-keeping and pay practices of the Parent Defendants, which the Parents Defendants applied uniformly to all of their subsidiaries and the subsidiaries' employees. Accordingly, each Parent Defendant was a joint employer of the Coal Miners who have worked at the Indiana Mines.

34.     Among other things, the Parent Defendants required their subsidiaries, including the Gibson North and Gibson South Mines, to utilize the Parent Defendants' proprietary time-keeping hardware and software system developed by another ARLP subsidiary, Matrix Design Group, LLC, as the exclusive means for its subsidiaries to record the time worked and to determine the times periods for which these subsidiaries would pay for work performed by their employees.

35.     Parent Defendants and Subsidiary Defendant are joint employers as: (1) Subsidiary Defendant installed the tracking system and time-keeping system provided by the Matrix Entities to all of Defendants' mines; (2) Subsidiary Defendant, like all operators of Defendants' mines, chose to willfully ignore the data generated by that system regarding work performed prior to the scheduled beginning of shifts and instead pay workers only from the scheduled beginning of the shifts; (3) the data available to Subsidiary Defendant were also available to Parent Defendants.

36.     In addition to exercising authority to hire, fire, discipline, and otherwise exercise payroll, scheduling and human-resources-related control over the Subsidiary Defendant, the Parent Defendants also exercised control over the pay rates and insurance benefits provided by the Subsidiary Defendant to its nominal employees.

37.     In addition, the Parent Defendants supervised the actual work performed by the nominal employees of the Subsidiary Defendant. For instance, the Subsidiary Defendant would receive directions from the Parent Defendants regarding how their workers should perform mining operations and in what direction workers should mine for coal.

38.     Upon information and belief, the Parent Defendants expressly supervise and control the policies and practices utilized by the Subsidiary Defendant to pay Plaintiffs and Coal Miners, including the policies and practices alleged in this Complaint.

**B.      The Work Performed by Plaintiff and Coal Miners**

39.     Plaintiff worked as a Coal Miner in the Indiana Mines. Plaintiff worked at the Gibson North mine during 2017 and 2018 and at the Gibson South mine from 2018 until April 2020.

40.     Plaintiff and other Coal Miners are not members of a union.

41.     Plaintiff and Coal Miners have worked long hours on day and night shifts to keep the mines operating, and in order for Defendants to maximize their profits. Plaintiff typically worked five ten-hour shifts per week and was frequently required to work weekends.

42.     The work that Plaintiffs and other Coal Miners perform is hazardous and dangerous.

43.     The Supreme Court of the United States has long recognized the special difficulties involved in the job of mining coal as follows:

> Those who are forced to travel in underground mines in order to earn their livelihood . . . must journey beneath the crust of the earth, far removed from the fresh and open air and

from the beneficial rays of the sun. … A heavy toll is exacted from those whose lot it is to ride and walk and mine beneath the surface. From the moment they enter the portal until they leave they are subjected to constant hazards and dangers; they are left begrimed and exhausted by their continuous physical and mental exertion.

Jewell Ridge Coal Corp. v. Loc. No. 6167, United Mine Workers of Am., 325 U.S. 161, 162 (1945).

44.   Plaintiff and Coal Miners have routinely worked more than forty hours in a workweek.

45.   Plaintiff and other Coal Miners were paid on an hourly basis at an agreed hourly rate, and in addition were entitled to be paid and were paid various types of bonuses.

46.   Plaintiff and other Coal Miners have not been paid for all of the time that they spend performing work, including work performed both before and after their regularly scheduled shifts.

47.   Defendants required Plaintiff and Coal Miners to arrive to their work shifts sufficiently early to have time to don protective gear and be dressed and ready prior to the beginning of their shifts and to attend safety meetings prior to the beginning of their shifts.

48.   However, Defendants never paid Plaintiff and Coal Miners for the time spent working prior to beginning of their scheduled shift or for safety meetings; Defendants would only begin paying Plaintiff and Coal Miners for work at the scheduled beginning of their shifts.

49.   During the time that Plaintiff and Coal Miners were required to be present at the Indiana Mines prior to the scheduled beginning of their shift, Plaintiff and Coal Miners routinely performed a variety of activities that constituted compensable work, including the following:

   a.   Retrieving specialized protective gear and clothing from lockers and/or buckets located at the mine's above-ground bathhouse;

   b.   Donning specialized protective equipment and clothing issued by the Defendants and required for the dangerous environment of an underground

coal mine, including coveralls, boots, helmet, lamp, reflective gear, work belt, self-rescuer, text-pager tracking device, hearing protection, safety glasses, respirator, and gloves;

c.      Gathering tools to be used during scheduled shift from an above-ground storeroom; and

d.      Gathering materials to be used during scheduled shift also from an above-ground storeroom.

50.      In addition, at the end of each shift, Plaintiff and Coal Miners were required to perform the time-consuming task of doffing their specialized protective equipment, returning tools and supplies to the appropriate location, returning their gear to their lockers and readying equipment for use on future shifts. This work took a substantial amount of time.

51.      However, Defendants did not pay Plaintiff and Coal Miners for this time. Defendants stopped paying Plaintiff and the Coal Miners at the time they came above-ground and did not pay them for doffing their specialized protective equipment or any other work.

52.      All of the pre-shift and post-shift work performed was an integral and indispensable part of the principal work activities of Plaintiff and Coal Miners.

53.      Defendants were aware that Plaintiff and Coal Miners performed this work before and after their shift, both because they required these activities to be performed and because they employed and had the ability to use sophisticated technology that provided detailed information to Defendants about the times that each employee reported to work prior to the scheduled beginning of their shifts and performed work off the clock.

54.      Specifically, Defendants installed "tracker" devices capable of following and recording the exact location of each miner attached to each miner's helmet, and Defendants

required the helmets to be worn by the miner at all times in the workplace. The tracking system is not merely capable of recording the current location of each miner's tracker device, but also is capable of recording and preserving in Defendants' data systems the exact time each miner moves to a new location.

55.     Although Defendants' system was capable of automatically recording the exact time when Plaintiff and the Coal Miners would arrive at the facility to begin work, Defendants did not utilize that time for the purpose of paying Plaintiff and other Coal Miners.

56.     Rather, Defendants failed to pay any coal mining employees for their time expended in compensable activities prior to the scheduled beginning of the shift; and instead, Defendants would only pay Plaintiff and the members of the Collective from the time that their shift was scheduled to begin.

**C.     Defendants Did Not Pay the Proper Overtime Rate to Plaintiff and Coal Miners**

57.     In addition to not paying Plaintiff and the Coal Miners for time spent working before and after their shifts, Defendants also failed to pay Plaintiff and the Coal Miners the appropriate overtime rate of compensation for overtime work performed.

58.     Plaintiff and the Coal Miners were paid several forms of bonus compensation that were not discretionary, and therefore, should have been included in their "regular rate" of compensation for determining their overtime rate of compensation.

59.     Upon information and belief, Defendants provided their employees a "*Benefits Handbook*," which described certain bonus compensation to which Plaintiff and the Coal Miners would be entitled as part of their compensation for their work for Defendants.

60.     Non-discretionary bonuses included, among others:

        a.     An annual Attendance Incentive Bonus;

b.      A New Electrical Certification bonus;

c.      A New Mine Foreman certification bonus;

d.      An annual Emergency Medical Technician Certification Bonus;

e.      An annual Mine Emergency Technician Certification Bonus;

f.      An annual seniority days bonus starting at each employee's sixth year of service, giving a bonus of one "day" or eight (8) hours of regular pay in the first year of eligibility, and with an additional 8 hours of pay accruing each year (with the maximum accrual being twenty (20) days);

g.      A Weekly Production Bonus based on productivity and man hours, utilizing a formula that took into account the amount of coal mined during the week in the mine in question, the percentage of the coal mined which was "clean," the number of employee hours expended to mine the coal, and similar objectively-quantifiable facts;

h.      A Safety Incentive Bonus that was calculated based on a formula derived from objective data.

61.     Defendants paid these bonuses to Plaintiff and the Coal Miners, but Defendants failed to include certain of such bonuses in the "regular rate" used to calculate the overtime rate of pay for Plaintiff and the Coal Miners in the weeks that the bonuses were paid. Defendants' failure resulted in Plaintiff and the Coal Miners receiving lower overtime rates than they were owed for the weeks in which the bonuses were paid.

62.     These bonuses should have been included in calculating employees' overtime rates of pay.

63.     Additionally, the Plaintiff and the Coal Miners were not compensated for the full amount of overtime that they were owed each week, because, upon information and belief, Defendants included a type of implicit overtime premium it referred to as the "boosted hours method" in the formula used to calculate two types of bonuses (production and safety bonuses), but this formula did not compensate Plaintiff and the Coal Miners for the full overtime premium owed because the number of hours used by Defendants in the "boosted hours" formula was based on the number of hours Defendants credited the employees with working and therefore did not include all time worked as described above.

64.     Defendants knew or should have known that the work that they required of Plaintiff and other Coal Miners should have been paid for all time worked before and after their regularly scheduled shift under the FLSA.

65.     Defendants knew or should have known that the non-discretionary bonuses that they paid should have been properly incorporated into the regular rate for purposes of calculating overtime compensation under the FLSA.

66.     Defendants are sophisticated national businesses with access to knowledgeable human resource specialists and competent labor counsel.

67.     Defendants do not maintain accurate records of the actual hours that Plaintiff and Coal Miners worked each workday and the total hours worked each workweek.

68.     Defendants have acted willfully and with reckless disregard of clearly applicable FLSA and state law wage and hour provisions by failing to compensate Plaintiffs and Coal Members for all hours worked in excess of forty (40) during the workweeks.

## COLLECTIVE ACTION ALLEGATIONS

69.     Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on

14

behalf of the FLSA Collective defined above.

70.     Plaintiff desires to pursue this FLSA claim on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

71.     Plaintiff and the FLSA Collective are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to the Defendants' previously described common pay and timekeeping practices and, as a result of such practices, were not paid the full and legally mandated minimum wage for non-overtime hours and overtime premium for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common compensation, timekeeping and payroll practices.

72.     The FLSA Collective Members have the same or closely similar job duties as the Plaintiff, and Plaintiff and all Collective Members were paid by Defendants in the same manner, in violation of the FLSA. Accordingly, the named Plaintiff is similarly situated to all FLSA Collective Members.

73.     Plaintiff and the FLSA Collective performed the same type of work, the manner and terms of which were controlled by the Defendants, and were not paid for all time worked or at the proper overtime rate as required by federal law.

74.     The similarly situated employees are known to Defendants, are readily identifiable, and may be located through Defendants' records.

75.     Defendants employ many FLSA Collective Members throughout Indiana. These similarly situated employees may be readily notified of this action through direct U.S. mail and/or other appropriate means, and allowed to opt into it pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or,

alternatively, interest), and attorneys' fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

76.     Plaintiff incorporates by reference the foregoing allegations as if set forth herein.

77.     Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the Indiana Class defined above.

78.     The members of the Indiana Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than 100 members of the Indiana Class.

79.     Defendants have engaged in the same conduct towards Plaintiff and the other members of the Indiana Class.

80.     The injuries and damages to the Indiana Class present questions of law and fact that are common to each class member within the Indiana Class, and that are common to the Indiana Class as a whole.

81.     Plaintiff will fairly and adequately represent and protect the interests of the Indiana Class, and all of its proposed class members because there is no conflict between the claims of Plaintiff and those of the Indiana Class, and Plaintiff's claims are typical of the claims of the Indiana Class.

82.     Plaintiff's counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

83.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Indiana Class predominate over any questions affecting only individual Class members including, without limitation: (1) whether Defendants paid them for all time worked; and (2) whether Defendants failed to pay them the full amount of overtime compensation earned.

84.     Plaintiff's claims are typical of the claims of the Indiana Class in the following ways, without limitation: (a) Plaintiff is a member of the Indiana Class; (b) Plaintiff's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Indiana Class; (c) Plaintiff's claims are based on the same legal and remedial theories as those of the Indiana Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff and the Indiana Class members; and (e) the injuries suffered by Plaintiff are similar to the injuries suffered by the Indiana Class members.

85.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated individuals to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Indiana Class is readily identifiable from Defendants' own employment records. Prosecution of separate actions by individual members of the Indiana Class would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

86.     A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical.  Further, the amounts at stake for many of the Indiana Class members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

87.     Without a class action, Defendants will unjustly retain the benefit of their wrongdoing, which will result in further damages to Plaintiff and the Indiana Class. Plaintiff

envisions no difficulty in the management of this action as a class action.

**COUNT I**
**Violation of the FLSA - Overtime**
**(On Behalf of the Plaintiff and the FLSA Collective)**

88.     All previous paragraphs are incorporated as though fully set forth herein.

89.     The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he or she is employed. *See* 29 U.S.C. § 207(a)(1).

90.     The FLSA defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee …." 29 U.S.C. § 207(e).

91.     With a few limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. 29 U.S.C. § 207(e); 29 C.F.R. § 778.108.

92.     Defendants are subject to the wage requirements of the FLSA because each of the Defendants is an "employer" under 29 U.S.C. § 203(d).

93.     At all relevant times, each of the Defendants was an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

94.     During all relevant times, Plaintiff and Collective Members were covered employees entitled to the above-described FLSA protections. *See* 29 U.S.C. § 203(e).

95.     Plaintiff and Collective Members are not exempt from the requirements of the FLSA.

96.     Plaintiff and Collective Members are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1).

97.     Defendants' compensation scheme applicable to Plaintiff and Collective Members

failed to comply with either 29 U.S.C. § 207(a)(1) or 29 C.F.R. § 778.112.

98.     Defendants knowingly failed to compensate Plaintiff and Collective Members for all hours worked when they worked in excess of forty (40) hours per week and failed to pay proper overtime premiums at a rate of one and one-half (1 ½) times their regular hourly wage, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112. More specifically, Defendants have failed to include non-discretionary bonuses in calculating the Plaintiff's and Collective members' "regular rate" for the purpose of calculating the applicable time-and-a-half overtime premium, and Defendants have failed to compensate Plaintiff and Collective Members for off-the-clock work.

99.     Defendants also failed to create, keep and preserve records with respect to work performed by the Plaintiff and the FLSA Collective sufficient to determine their wages, hours and other conditions of employment in violation of the FLSA, 29 U.S.C.A. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

100.     In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

## COUNT II
## UNJUST ENRICHMENT UNDER INDIANA LAW
### (On Behalf Plaintiff and the Indiana Class)

101.     All previous paragraphs are incorporated as though fully set forth herein.

102.     This count is brought against Defendants pursuant to the common law doctrine of unjust enrichment.

103.     Indiana courts articulate three elements for [unjust enrichment] claims: (1) a benefit conferred upon another at the express or implied request of this other party; (2) allowing the other party to retain the benefit without restitution would be unjust; and (3) the plaintiff expected payment." *Woodruff v. Indiana Family & Soc. Servs. Admin*., 964 N.E.2d 784, 791 (Ind. 2012).

104.     Defendants have received and benefited from Plaintiff's uncompensated labors, along with that of the other Class Members, such that to retain said benefit without compensation would be inequitable and rise to the level of unjust enrichment.

105.     At all relevant times hereto, Defendants devised and implemented a plan to increase its earnings and profits by fostering a scheme of securing work from Plaintiff and the Class without paying overtime compensation for all hours worked.

106.     Contrary to all good faith and fair dealing, Defendants induced Plaintiff and the Class to perform work while failing to pay overtime compensation for all hours worked as required by law.

107.     By reason of having secured the work and efforts of Plaintiff and the Class without paying overtime compensation as required by law, Defendants enjoyed reduced overhead with respect to its labor costs, and therefore, realized additional earnings and profits to their own benefit and to the detriment of Plaintiff and the Class.  Defendants retained and continue to retain such benefits contrary to the fundamental principles of justice, equity, and good conscience.

108.     Accordingly, Plaintiff and the Class are entitled to judgment in an amount equal to the benefits unjustly retained by Defendants.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief on his own behalf and all others similarly situated:

  a.     An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

  b.     An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Indiana Class;

c.    Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all

potential FLSA Collective members;

d.    For unpaid wages as may be owed and prejudgment interest to the fullest

extent permitted under the law;

e.    Liquidated damages to the fullest extent permitted under the law;

f.    Litigation costs, expenses and attorneys' fees to the fullest extent permitted

under the law; and

g.    Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues of fact.

Respectfully submitted,

Dated: April 13, 2021                          By: /s/ Jeffrey A. Macey
                                               Jeffrey A. Macey
                                               Attorney at Law
                                               MACEY SWANSON LLP
                                               445 N. Pennsylvania Street, Suite 401
                                               Indianapolis, IN   46204
                                               Phone: (317) 637-2345
                                               Facsimile: (317) 637-2369
                                               jmacey@MaceyLaw.com

                                               Eric Lechtzin*
                                               Liberato P. Verderame*
                                               EDELSON LECHTZIN LLP
                                               3 Terry Drive, Suite 205
                                               Newtown, PA 18940
                                               Main: (215) 867-2399
                                               Fax: (267) 685-0676
                                               elechtzin@edelson-law.com
                                               lverderame@edelson-law.com

Sarah R. Schalman-Bergen*
Thomas Fowler*
Olena Savytska*
Krysten Connon*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
267-256-9973
ssb@llrlaw.com
tfowler@llrlaw.com
osavytska@llrlaw.com
kconnon@llrlaw.com

Camille Fundora Rodriguez*
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
crodriguez@bm.net

Mark N. Foster*
Law Office of Mark N. Foster, PLLC
P.O. Box 869
Madisonville, KY 42431
(270) 213-1303
Mfoster@MarkNFoster.com

John R. Kleinschmidt, III*
THE LAW OFFICES OF JOHN R.
KLEINSCHMIDT III, PLLC
P.O. Box 1746
Lexington, KY 40588
(859) 866-3097
john@employmentlawky.com

*Motions for *Pro Hac Vice* Admission to be Filed

*Attorneys for Plaintiff and the Proposed Collective and Class*