UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| BRIAN PRATER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:21-cv-00066-RLY-MJD |
| ) | |
| ALLIANCE COAL, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER ON PLAINTIFF'S MOTION TO COMPEL THE PRODUCTION OF CERTAIN ESI AND NARROWED CATEGORIES OF DOCUMENTS RESPONSIVE TO THE FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS**

This matter is before the Court on Plaintiff's Motion to Compel the Production of Certain ESI and Narrowed Categories of Documents Responsive to the First Request for the Production of Documents. [Dkt. 127.] The Court held a hearing on the motion on June 21, 2023. *See* [Dkt. 195]. For the reasons and to the extent set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.  Background

This case was filed by Plaintiff Brian Prater, on behalf of himself and all others similarly situated, on April 13, 2021. [Dkt. 1.] In a nutshell, Prater alleged that Defendants, operating as joint employers of Prater and "all employees who worked as miners in Defendants' Gibson North and Gibson South mines in Gibson County, Indiana," *Id.* at 2, failed to pay their employees for "off-the-clock work" and for all overtime they were due. Prater asserted a claim for violation of the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. §§ 201, et seq., and unjust enrichment.

Defendant Gibson County Coal, LLC, moved to dismiss the unjust enrichment claim. [Dkt. 31.] The remaining Defendants, hereinafter referred to as the "Alliance Defendants," moved to dismiss for lack of personal jurisdiction. [Dkt. 33.] Defendants also moved to trifurcate discovery into three phases: Phase I (the "Joint Employer Phase"); (ii) Phase II (the "Certification Phase"); and (iii) Phase III (the "Merits Phase"). [Dkt. 29.] While those motions were pending, Prater moved to conditionally certify a collective action. [Dkt. 44.]

On December 2, 2021, Prater served his First Requests for Production on each of the Defendants, which consisted of 59 document requests. *See* [Dkt. 128-1].

In March 2022, Judge Young granted the motion to dismiss the unjust enrichment claim and denied the motion to dismiss for lack of personal jurisdiction without prejudice, finding that the Alliance Defendants were not subject to general jurisdiction in Indiana and that Prater was entitled to conduct jurisdictional discovery with regard to specific jurisdiction. [Dkt. 70.] Judge Young also granted the motion for conditional certification. [Dkt. 72.] Judge Brookman denied Defendants' motion to trifurcate. [Dkt. 71.]

A case management plan was entered in this case on April 5, 2022; it set a deadline of July 1, 2022, for jurisdictional discovery. [Dkt. 78.] As a result of disputes regarding Prater's jurisdictional discovery requests, that deadline was later extended to September 1, 2022. [Dkt. 85.] On May 16, 2022, Defendants filed a motion to vacate certain deadlines relating to those discovery disputes, reporting that they had decided to withdraw their challenge to specific jurisdiction. [Dkt. 91.] On July 1, 2022, Prater filed a motion for leave to amend his complaint, [Dkt. 114], to which Defendants objected, [Dkt. 120]. That motion was granted on March 23, 2023, and the Amended Complaint was filed a few days later, [Dkt. 155].

2

In their Amended Complaint, Prater and two new named Plaintiffs, Eric Thompson and Jacob Hood, asserted individual, class, and collective action claims pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and the Indiana Wage Payment Statute ("IWPS"), Ind. Code § 22-2-5-1, et seq., as well as a claim for unjust enrichment. On April 10, 2023, Defendants moved to dismiss the unjust enrichment and IWPS claims, [Dkt. 158]; that motion remains pending.

The Court recites this rather lengthy history for two reasons. First, it explains why the instant motion to compel was not filed until October 4, 2022, when the discovery requests at issue were served on December 2, 2021. Second, it demonstrates that it is abundantly clear that none of the parties have been particularly motivated to move this case forward in an expeditious manner. Indeed, on February 1, 2023, [Dkt. 151], and again on May 1, 2023, [Dkt. 162], the parties moved to stay all of the deadlines in this case pending the completion of private mediation proceedings. Those motions were both denied, first by Judge Brookman, [Dkt. 152], and then, after the case was reassigned, by the Undersigned, [Dkt. 165].[1] As those denials suggest, it is time for this case to finally begin moving toward a resolution, which requires merits discovery to move forward expeditiously.

## II. Motion to Compel Responses to Document Requests

Given the backdrop set forth above, it is unfortunate that the Court has reached the inescapable conclusion that the parties' briefing of the instant motion, as well as the time the Court has spent reviewing it, has largely been a waste of time. There are several reasons for that but, most fundamentally, Prater did not move to compel responses to the document requests that

---

[1] The mediation took place on June 12, 2023. It was unsuccessful.

3

were actually served, but rather seeks to compel responses to an entirely new set of eleven document requests.[2] Prater characterizes the new requests as a "narrowing" of his initial requests, and the new requests are narrower, in that they seek a more narrowly tailored set of information, but they are not simply the original requests made narrower. And while Defendants certainly could have (and frankly would have, had they been interested in moving this case along) responded to the motion to compel by engaging with the new requests, they did not, instead choosing to discuss the problems they perceived with the original requests. That was their right; they are correct that the Court cannot compel them to respond to document requests that have not been served, regardless of how much more efficient that course of action might have been.

The motion to compel must therefore be **denied** as to the document requests. However, the Court agrees with Prater that the eleven document requests set forth in the motion are an appropriate means to move discovery forward in this case. Accordingly, Plaintiffs shall serve those requests (hereinafter referred to as the " Supplemental Requests") on Defendants **within seven days of the date of this Order**. Defendants shall respond fully and completely to the Supplemental Requests **within 30 days of the date of service**. To the extent that Defendants have already produced documents that are responsive to a request contained in the Supplemental

---

[2] The Court recognizes that Prater ends his brief with the following sentence: "In the alternative, the Court should strike all of Defendants' baseless and obstructive objections and Order that they fully respond to each of the requests in Plaintiff's First RFP." [Dkt. 128 at 25.] However, Prater's brief does not provide adequate support for that alternative relief, and "[i]t is not this court's responsibility to research and construct the parties' arguments." *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011).

Requests, Defendants shall specifically identify those responsive documents, by Bates number, in their response to each request.

To avoid confusion, Plaintiff's original document requests are **deemed withdrawn**; with the exception of information covered by the ESI Protocol, discussed below, any information that Plaintiffs seek that is not encompassed by the Supplemental Requests must be sought in additional, new document requests that are served separately from the Supplemental Requests.

### III.  Defendants' Arguments

While the Court is generally loath to offer advisory opinions, in this case, in order to avoid a future motion to compel to address the types of clearly improper and inadequate objections Defendants made to the original document requests, the Court finds it appropriate to address the arguments made by Defendants in response to the instant motion.

#### A.  Boilerplate Objections Are Wholly Ineffective

First and foremost, when responding to the Supplemental Requests, Defendants shall keep in mind that the burden "rests upon the objecting party to show why a particular discovery request is improper."  *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 449-50 (N.D. Ill. 2006).  This burden cannot be met by "a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence."  *Burkybile v. Mitsubishi Motors, Corp.*, 2006 WL 2325506, at *6 (N.D. Ill. August 2, 2006) (internal citations omitted).  Those types of boilerplate objections will be summarily overruled.  Any objection to any of the Supplemental Requests must give specific reasons why a particular request is objectionable.  As the Court has explained before:

5

> When a party raises objections to discovery requests, the objecting party bears the burden to explain **precisely** why its objections are proper given the broad construction of the federal discovery rules. *In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994*, 172 F.R.D. 295, 307 (N.D. Ill. 1997); *see also Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 478 (N.D. Ind. 2009). Thus, general objections to discovery requests that merely recite boilerplate language without explanation do not meet this burden, and courts within the Seventh Circuit consistently overrule them or entirely disregard such. *See Novelty, Inc. v. Mountain View Mktg.*, 265 F.R.D. 370, 375 (S.D. Ind. 2009) ("'general objections' made without elaboration, whether placed in a separate section or repeated by rote in response to each requested category, are not 'objections' at all—and will not be considered"); *Burkybile*, 2006 WL 2325506, at *9 (overruling boilerplate objections made generally and without elaboration). . . .
>
> As other Seventh Circuit district courts have noted, "[m]aking general objections is a dangerous practice, as the party who offers such general objections runs the risk of having them summarily denied." *Avante Int'l Tech., Inc. v. Hart Intercivic, Inc.*, 2008 WL 2074093, at *2 (S.D. Ill. 2008). . . . Further, when the objecting party raises nonspecific, boilerplate objections without clearly explaining how the request is objectionable, courts should overrule the objections in favor of broad discovery, pursuant to the federal rules. *Novelty*, 265 F.R.D. at 375 (holding that boilerplate objections without explanation are deemed waived); *McGrath v. Everest Nat. Ins. Co.*, 625 F. Supp. 2d 660, 671 (N.D. Ind. 2008) (staying the objecting party must specify why the discovery request is improper); *In re Aircrash*, 172 F.R.D. at 307 (noting that the federal discovery rules should be construed liberally and broadly).

*Barker v. Kapsch Trafficcom USA, Inc.*, 2020 WL 3618945, at *1 (S.D. Ind. July 1, 2020). In addition,

> [a] party resisting discovery on the basis of undue burden must show with specificity that the discovery requests a[t] issue are objectionable. *See, e.g. Fair Oaks Dairy Farms*, 2012 WL 3138108 at *3 ("Dairy Farms has not pointed to a single discovery request that it alleges would be overly burdensome. . . . Dairy Farms simply states that the discovery would be burdensome and expensive without greater detail. The insufficiencies are fatal to its request."); *Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum LLC,* 2007 WL 1164970 at *4 (N.D. Ind. Apr. 18, 2007) (quotation omitted) ("[I]f a party is to resist discovery as unduly burdensome, it must adequately demonstrate the nature and extent of the claimed burden by making a specific showing as to how disclosure of the requested documents and information would be particularly burdensome."). **This showing typically requires affidavits or other evidence supporting a party's assertions of burden**. *See, e.g., Jenkins v. White Castle Mgmt. Co.,* 2014 WL

6

> 3809763 at *2 (N.D. Ill. Aug. 4, 2014) ("What is required is affirmative proof in the form of affidavits or record evidence."); *Burton Mech. Contractors, Inc. v. Foreman,* 148 F.R.D. 230, 233 (N.D. Ind. 1992) ("An objecting party must specifically establish the nature of any alleged burden, usually by affidavit or other reliable evidence.").

*Whole Woman's Health All. v. Hill*, 2019 WL 10886889, at *3 (S.D. Ind. Oct. 7, 2019) (emphasis added). In addition, Defendants' suggestion that a request that seeks "any and all documents" is *per se* overly broad is not well-taken. An objection based solely on the use of the term "any and all" is the type of boilerplate objection that will be summarily overruled.

The Court further notes that each of the document requests contained in the Supplemental Requests appears on its face to seek relevant information; accordingly, any relevancy objections in the future must specifically explain the alleged lack of relevancy. *See Gumwood Hp Shopping v. Simon Prop. Group*, 2014 WL 12780341, at *2 (N.D. Ind. June 25, 2014) ("When the discovery sought appears relevant, the party opposing the discovery bears the burden of proof to establish the discovery's lack of relevance by demonstrating that it is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.") (citing *Jones v. Hamilton Cnty. Sheriff's Dep't*, 2003 WL 21383332, at *3 (S.D. Ind. June 12, 2003)). In making any relevancy objections, Defendants should keep in mind that "[r]elevance in discovery is broader than relevance at trial; during discovery, 'a broad range of potentially useful information should be allowed' when it pertains to issues raised by the parties' claims." *Bank of Am., Nat'l Ass'n v. Wells Fargo Bank, N.A.*, 2014 WL 3639190, at *3 (N.D. Ill. July 23, 2014) (quoting *N.L.R.B. v. Pfizer, Inc.*, 763 F.2d 887, 889-90 (7th Cir. 1985)). In other words, establishing relevancy is not a high bar, and where "relevance is in doubt, courts should err on the side of permissive discovery." *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D.

568, 577 (N.D. Ill. 2004) (citation omitted); *see Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 2021 WL 3186959, at *3 (S.D. Ill. July 28, 2021) ("relevance must be broadly construed.").

### B. Class Discovery

There is no automatic prohibition of all class-wide discovery prior to a class being certified. To the extent that Defendants feel that certain class-wide discovery in this case should be delayed until after a class is certified, they should make case-specific arguments as to why, and also should explain why the discovery in question is irrelevant to class certification issues.

### C. Referencing Another Party's Document Production Is Not Sufficient

Next, the Court agrees with Prater that the Alliance Defendants' responses to certain requests with phrases like "see documents produced by Gibson County Coal, LLC, which *may* contain documents responsive" is improper. A party may not fulfill its discovery obligations by vaguely gesturing toward the discovery responses of another party.

### D. Attorney-Client Privilege

Finally, Prater is incorrect that Defendants have waived the attorney client privilege as to legal advice they may have received regarding the FLSA simply by asserting good faith as an affirmative defense.

> The "at issue" waiver doctrine is limited and "should not be used to eviscerate the attorney-client privilege." *Silverman v. Motorola, Inc.*, 2010 WL 2697599, at *4 (N.D. Ill. July 27, 2010) (citing *LG Electronics v. Whirlpool Corp.*, 2009 WL 3294802 (N.D. Ill. 2009)). Merely asserting a claim or defense to which attorney client communications are relevant, without more, does not constitute a waiver of attorney-client privilege. The privileged party must affirmatively put at issue the specific communication to which the privilege attaches before the privilege will be deemed waived. *United States v. Capital Tax Corp.*, 2011 WL 1399258 (N.D. Ill. 2011); *Beneficial Franchise Co., Inc. v. Bank One*, 205 F.R.D. 212, 216 (N.D. Ill. 2001).

*Cage v. Harper*, 2019 WL 6911967, at *1-2 (N.D. Ill. Dec. 19, 2019); *see also Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) ("The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication."). Absent some indication that Defendants intend to introduce evidence that they sought and received advice of counsel, no waiver has occurred. *See Gookins v. Cnty. Materials Corp.*, 2020 WL 489567, at *3 (S.D. Ind. Jan. 30, 2020). The cases cited by Plaintiffs in support of their argument in which waiver was found do not support a contrary result. In each of them, the party in question took an affirmative action that put the advice it had received from counsel at issue. *See Scott v. Chipotle Mexican Grill, Inc.*, 67 F. Supp. 3d 607, 615 (S.D.N.Y. 2014) ("At the deposition of [Chipotle's witness], the witness testified that Chipotle consulted with attorneys in making the classification decision. When asked about the existence of communications regarding the apprentice classification, [the witness] admitted that 'there were communications. They were in the context of communications and discussions with our lawyers.' . . . In fact, [the witness] testified that he had 'no recollection' of ever communicating with anyone at Chipotle regarding the apprentice classification other than in the presence of his attorneys."); *McLaughlin v. Lunde Truck Sales, Inc.*, 714 F. Supp. 916, 919-20 (N.D. Ill. 1989) ("By voluntarily using their counsel's affidavit as proof of their good faith, the defendants imply that their interpretations of DOL actions are reflected in their counsel's interpretation and understanding of DOL actions. More importantly, the defendants are attempting to control which of their counsel's interpretations are discoverable."); *Carson v. Lake Cnty.*, 2016 WL 1567253, at *6 (N.D. Ind. Apr. 19, 2016) ("The Court finds that Defendant has impliedly waived its attorney-client privilege as to communications with Attorney Dull related to

Plaintiffs' termination both through Repay's testimony concerning portions of the attorney-client communication and by asserting reliance on the advice to support its affirmative defenses.").

Waiver of the privilege certainly could occur in this case, but Prater has not demonstrated that it has at this point. That said, **Defendants are obligated to provide a privilege log setting forth each document they withhold on privilege grounds along with their document production.**

## IV.  ESI Production

Finally, in addition to the document requests, Prater's motion to compel also seeks to compel Defendants to fulfill their obligations under the ESI Protocol that was entered in this case by agreement of the parties. [Dkt. 77.] The Court's understanding is that Defendants now believe that production to be complete, with one small exception. *See* [Dkt. 195 at 20] (representation that ESI production complete "with a very, very small caveat"). Nonetheless, the Court **GRANTS** the motion to compel with regard to the ESI production to the following extent. **Within 14 days of the date of this Order**, each Defendant shall file the following certification:

> I hereby certify pursuant to the penalties for perjury that [Insert name of party] has completed the searches required by the ESI Protocol in this case and that all responsive documents identified by those searches have been produced to Plaintiff.

## V.  Conclusion

For the reasons set forth above, Prater's Motion to Compel the Production of Certain ESI and Narrowed Categories of Documents Responsive to the First Request for the Production of Documents, [Dkt. 127], is **GRANTED** to the extent that Defendants shall provide the certification set forth above with regard to their ESI production and **DENIED** in all other respects. Plaintiffs shall serve the Supplemental Requests on Defendants **within seven days of the date of this Order**. Defendants shall respond fully and completely to the Supplemental

Requests, and provide a privilege log, **within 30 days of the date of service**. To the extent that Defendants have already produced documents that are responsive to a request contained in the Supplemental Requests, Defendants shall specifically identify those responsive documents, by Bates number, in their response to each request.

SO ORDERED.

Dated: 21 SEP 2023

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record
via email generated by the Court's ECF system.